8075

Dejans Transfer. Inc.  :  No. 8 0 7 5.

   -versus-    :  Court of Appeal.

Schmidt & Zeigler.  :  Parish of Orleans.

Dinkelspiel. J.

8075

Dinkelspiel. J.

Plaintiff institues this suit against defendant claiming
an indebtedness of $497.50, arising from the fact alleged,
that on the 13th. September, 1919, plaintiffs team consis-
ting of a spring wagon with one mule was driven by one of
the empoyess of plaintiff, on Water Street, in the City
of New Orleans, near the Louisville & Nashville Railraod
Sheds, between Julia and Girod Streets, and that while
said team of plaintiff was proceeding in the direction of
Girord Street from Julia Street, on Water Street,or river
front roadway, and when at a point near the middle of said
block, plaintiff's driver saw an auto truck approaching
from the opposite direction at a rapid rate of speed, that
said driver in order to give defendants driver room to pass,
brought his team to a stand still; defendants truck was
about fifty feet from where plaintiff's mule and wagon Stood.
That defendant's driver did not slacken his speed and passed
plaintiff's mule and wagon on the right side of said mule
and wagon, and in so passing  plaintiff's mule and wagon,
said truck struck the right shaft of plaintiff's wagon with
such force as to knock plaintiff's mule doen and break
plaintiff's wagon.

That there was room for defendants driver to have passed
plaintiff's mule and wagon with savety, but said driver was
guilty of recklessness and want of care in striking palin-
tiff's mule and wagon, and said accident happened entirely
through the fault, recklessness and negligence of defendant's
driver and through no fault or want of case and caution on
the part of plaintiff's driver.¶ and as a result of the mule
being knocked down and injured it was necessary to place him
in the care of a Veterinary Surgeon for treatment where he
remained eighteen days, subsequently going into pasture, and

621

after being there for a while removed  to plaintiff's stable
where he was properly attended to, fed and cared for, itemiz-
ing the amount of money expended for the Veterinery, for
the killing of the mule, which subsequently died, for the
pasture of the mule and for other necessarv expendes in all
amounting to the claim as specified and set out by plaintiff,
and for which demand judgment is prayed for.

The defendant denies that it's truck was travelling at
an unlawful and reckless rate of speed, and avers, that plain
tiff's driver drove his mule and wagon in such close proximity
to the truck of defendant that it was impossible to avoid
strikeing it; that said accident was duly etirely to fault
and negligence of plaintiff's driver; that defendant's driver
did everything in his power to avoid the accident, and the
injury to plaintiff's mule was not the fault or negligence
on the part of defendant's driver.

Denying further, damages claimed, particularly for the
loss of the mule and repair of the wagon, and therefore
parys for a dismissal of this cause, and judgment accordingly.

The testimony in this case is confined mainly to the driver
of plaintiff's wagon, and he, in may respects contradicts
himself as to the position of his wagon and the position of
defendant's truck.

He says: " I left the railroad and pulled on the side.
There was box car on the side of my wagon; the defendant's
truck was coming about fifty feet from me when I stopped my
wagon so he ran into me, and hit the shaft and threw my
mule down".

In answer to a question by the Court, this witness goes on
to say:- The truck struck him in front, " and he went about
80 feet from me before he stopped; it hit into the shaft".
Again; - Q- Was there any room on your right side for him
to pass without hitting your wagon?  -A- Yes.
Q- Was there room enough?  -A- There was enough room.

The Court:- Q- What street was that on? -A- Water Street.
Q- That is the front street out there on the levee? -A- Yes.
Q- That is where all those trucks are? -A- Yes, Sir.
Q- Is that street paved out there with those heavy blocks?
A- Yes, it has the rock, as you have on Chartres St. Belgin
block.

He goes on, and testified; that the wagon stopped in the
middle of the block from Lafayette Street, and the driver
of defendant truck turned from Lafayette in to Water Street.
Q- You could not pull further on the left?
A- No, Sir; because I was up against the box car.
Q- But that was not the right side for you to be on, the left?
A- I don't know about the right side or the left side there;
there was a switch engine coming behind me; I could not get
on the right side because of some box cars.
Q- If you had given him room to pass you on the right, you
would have been on the right hand side of the roadway?
A- I could'nt go to the right on account of the railraod,
there was whole lot of wagons unloaded.
Q- How did you expect him to pass on your right side?
A- He could have passed because he was coming up.
Q- Well, the space was exactly the same whether you went up
or down?
A- On account of another box car, I can't say exactly the
distance, if I had gone in there I would have blocked the
road and a freight train would have caught me on the track,
the train coming behind me.
Q- But if you had gone on the right he could have continued
on your left? -A- I could'nt because I had just pulled away
from the railroad.
Q- Why did you pull over there? -A- I had got a couple of
packages from the railroad and had to put my wagon out of
the way.

The next and only witness for defendant was Charles Mutin,

who at the time was the driver of defendant's truck. He goes on to say, that the accident occurred by the L. & N. Railroad, on Front Street, and when he came out Lafayette to Front, he slowed up and turn on Front Street in the direction of uptown, and when came up Front Street he drove to the right side of the street, and that was the only way to drive. He first saw this wagon on Front St. about 50 or more yards from where he stood, and it was on the right side.

Q- When plaintiff's driver stopped what did you do?

A- I continued when he stopped. I swung to pass him, but the street being wet, the back part of the truck hit the mule and broke the shaft; it had been raining that day.

Q- Did you try to pull out of the way as soon as you saw the driver of plaintiff's wagon stop?  -A- Yes.

Q- Did you use every means at your command to get out of the way?.xIxx  -A- Yes, Sir.

And he also testified, that he was going at the usual speed, 15 miles an hour, and he was pulling out of the tracks  in order to tay and didge plaintiff's wagon.

Q- If plaintiff's driver had been on the left side of the road would you have passed him without striking him? -A- Yes.

We have thus given the main portions of the testimony of both drivers, in order to show, from their statements, the situation at the time this accident occurred.

It is evidence to our minds, that if plaintiff's driver had turned, at the time he first saw defendant's truck, to the left, as he should have done, this accidend would never have occurred.

It is further satisfactorily proven, that defendant's
this
driver did everything in his power to avoid khmaccident, that he was where he should have been with his truck, and that he was under the belief, as he sould have been and as he had a right to be, that plaintiff's driver would move his mule and wagon, as he sould have done, and thus an

624

accident would have been impossible, but we believe that the driver of plaintiff fearing the the engine with the steam car might strike him and do possibly a severe injury, he backed up against the box car, as described by him in his testimony, when he should have driven to get out of the way of not only this truck but others in similar position. If there was any negligence, and there was not in our opinion, it was the negligence of plaintiff's driver and not of defendants driver.

For the reason herein assigned, it is ordered, adjudged and decreed, that judgment of lower Court, be and the same is now affirmed. Costs of both Courts to be paid by plaintiff.

-Judgment Affirmed-